222050. And I understand that there is a request for one minute of rebuttal. Yes, Your Honor. Granted. So you can proceed. Thank you, Judge. Thank you, Your Honors. Maurice Ferrillo appearing for Mr. Zaso. We're appealing the District Court's order which had reversed Magistrate McCarthy's determination that there are reasonable terms and conditions for Mr. Zaso's release. Judge Arcaro's order should be reversed and the decision of the magistrate reinstated for the following reasons. After three court appearances, Judge McCarthy fashioned reasonable terms and conditions which addressed the two issues, the need to appear and safety concerns. And we would submit that the government failed to establish by clear and convincing evidence that there was a strong probability that the defendant would cause additional crimes if released as set forth in the Chimurenga case in 760 F. Second 400. Well, he had done that in the past. I'm sorry? He had done that in the past. That was the government's view and that's the view that was embraced by Judge Arcaro. Well, he had been charged with drug offense previously, had been convicted previously. And he was... And had continued to engage, allegedly, engage in drug trafficking while on supervision. Well, it's interesting, Judge, that, and that will get to the other issue about the probation records. He was under supervision for four years and they acknowledged that there were no, the probation reported there were no violations during their period of supervision. So I think that was the risk. But the alleged crime here that he's detained for is alleged to have occurred during supervision. Yes. And a grand jury found enough to indict him. That's true. But I would submit to the court, and of course, many defendants have records, many defendants have situations that they have. The issue is the significant risk of danger. Risk of flight was not the issue. Well, the heroin with fentanyl, which is dangerous to the community. Wouldn't you agree? Yes. I know that. And he has a presumption of innocence, obviously. Yes. Yes. I understand. And many people could be viewed in that way. I mean, the case that I cited from the Second Circuit indicating generally that release is favored. I mean, we can't hold everyone... But once you say yes, in answer to Judge Carney's question, then how in the world can we determine that it was an abuse of discretion for Ja'Arqara to make that same determination, that it's dangerous, particularly because of the fentanyl? Well, the court has to look and see if there's a significant risk of danger. There's no history of crimes of violence or any abuse of any individuals in terms of violence. So we don't have that issue. Is there a domestic violence charge? Was there a domestic violence charge? Or am I misremembering? I don't recall, Your Honor. I don't recall that. But obviously, the court can... And I also would point out that, as I said, Judge McCarthy had three sessions in tailoring this. The sister had come in. He had talked to her in terms of that. She posted her property. They have a very close relationship. And of course, the terms included that if he violated any terms, it would be grounds for forfeiture of her home, which is, I think, very valuable. And there were also other terms, lawful employment, electronic monitoring, curfew. Sure, sure. Those are all... I mean, all the stuff that... All relating to risk of flight. But dangerousness is another established reason. Well, the dangerousness could be monitored in various ways. I mean, obviously, he's got curfew, home detention. Those are all things that would help in terms of that. And what would the probation records have revealed that would change if we were to decide that the indictment, the fact that he was charged with this crime involving heroin and fentanyl while he was on supervised release, what possibly could the probation records... Even if he had a spotless record, the probation hadn't detected anything potentially. Why would that change the calculus? Well, it would have shown whether... What inspections they had done. And it would also go to the weight. I mean, obviously, we dispute, even assuming there's some evidence of some activity, we just... They're claiming a great deal of activity, significant activity, but there was nothing found in terms of money, contraband at his home, for example. And it would go to the weight of the evidence that was presented, I think, in terms of how the court was to consider that. And again, there was no hand-to-hand buys, anything of that nature. All right. So you've reserved a minute. Yes, Your Honor. Thank you. Very much appreciated. We'll hear from the government. And I should tell everyone on counsel that you're free to take off your mask when you're at the podium. When you return to the side tables, please put your mask back on. Thank you. Good morning. May it please the Court. Catherine Gregory for the United States. This Court should deny the motion. Mr. Zaso clearly disagrees with how the district court weighed the 3142G factors, but he hasn't pointed to any errors, let alone clear error, an error so egregious that it would leave this Court with a definite and firm conviction the mistake has been made. The district court was looking at the presumption in favor of detention, a 10-year mandatory minimum sentence if Mr. Zaso is convicted, these, as Your Honor noted, these – this offense involved allegedly heroin and fentanyl, extremely dangerous drugs, and there was a recovery of 300 grams of fentanyl from one of the co-conspirators. The district court was also looking at a strong proffer by the government, the fact that Mr. Zaso allegedly committed this while on probation, and that he had a prior felony conviction for substantially similar conduct. What about the probation records? Why wouldn't the government just produce those on request? The government has produced some of the probation records as of – excuse me while I check the date – June 15th. Some of the probation records were turned over. As I understand it, not all of them were. I'm not the trial AUSA, but I did check that before I came here today. But I believe that's a little bit of a red herring for two reasons, the first being that this isn't really the right vehicle to challenge that kind of discovery issue, but the other reason is that Judge Arcaro actually said, assuming the foregoing to be true, so if the government conceded that he wasn't violated on probation, we – we agree that that – that he wasn't caught, essentially, but that that just goes to the fact that he was able to evade detection. And Judge Arcaro said even if he was employed, even if he has these mitigating factors, I believe he wants to verify his employment through those probation records as well, that that doesn't outweigh the risk of dangerousness. And I believe that's on page 8 of Judge Arcaro's decision. And he explains even if those are true. So it – I don't think the probation records would sway this issue one way or the other, given that concession by the government that he wasn't caught, he wasn't violated. Some of them have been turned over. And of course, this case is proceeding in the usual manner. Judge Arcaro's analysis of least restrictive means was – was – of – of ensuring the safety of the community was what? I would have to check the decision, Your Honor, but I do know that he – he based it on the dangerousness and not on the likelihood that he would return to court. So he noted that the fentanyl, in particular, in his view at least, can be more dangerous than some things that are deemed crimes of violence, especially in the quantity in which it was recovered from the co-conspirator. And I do just want to clarify one thing in the record. Mr. Zaso says there were no hand-to-hands, but there was a monitored transaction in that the co-conspirator was followed by law enforcement to a house where that person entered with the defendant and came back out with that fentanyl. And there was a detailed police report that was actually entered as a sealed exhibit and that has been turned over to Mr. Zaso, of course. So these were the things that Judge Arcaro was looking at. And faced with that presumption, the – the fact that there was the prior felony for very similar conduct, that he was allegedly doing this while on probation, the fact that it's fentanyl, the proffer by the government, and the fact that, as he noted, Mr. Zaso didn't really do anything to rebut that presumption of dangerousness. Any of the terms that he offered went more to the ability or the likelihood that he would return to court. And am I – am I right that we're reviewing only for clear error here? Yes. Do you know that that is the standard applicable throughout this appeal? Yes. Well, especially here where there – this Court has already said that these usually involve little to no legal interpretation. So – and I don't believe there are any areas of law alleged here. But, yes, with a factual determination like this as to dangerousness and the factual findings as to the proffer and the allegations, yes, it would be reviewed for clear error. And in this context, with these facts, Mr. Zaso simply hasn't rebutted that presumption and – and hasn't established clear error on appeal. Unless the Court has any further questions, we ask that you deny the motion. Thank you. Thank you. Your Honor, I would note that the allegation – the second charge in the indictment deals with Mr. Zaso having a drug premises, but there was no drugs found at Locust Street, which is the second count. Even though probation was monitoring his residence, there was no drugs or money found at his residence when they searched him when he was arrested. And they had a tracker on his vehicle, and they weren't able to tie any specific transaction, having a number of months to monitor him in this case. I would also point out that the post-release records would also verify his employment and his being productive in terms of lawful employment. But didn't Judge Arcaro just assume the accuracy of the defense's assertion that he was successfully employed? I'm not sure, Your Honor, whether that would be assumed. I mean, obviously, the probation records would supplement or would corroborate what we had said in terms of our allegations of employment, the kind of stuff that he was doing. So I know the law generally favors pre-trial release, the Sabahani case that I cited, and I'd ask the Court to reinstate Judge McCarthy's conditional order of release or, if necessary, grant a further hearing on the probation records with the probation records being considered. Thank you very much. Thank you, Your Honors. We'll reserve the session, and we'll